**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KELVIN WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 11-00019-RET-DLD** |
| **TRANSOCEAN TERMINAL OPERATORS, PROJECTS EQUIPMENT COMPANY, WIRE ROPE CORPORATION OF AMERICA, TIMOTHY TRAYNOR, HERFORTH CORPORATION, GHZ INSURANCE COMPANY, FOREST LINES, INC.** | |

## MAGISTRATE JUDGE'S REPORT

The court granted plaintiffs' request to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915, and now *sua sponte* reviews the claims brought by plaintiff in his complaint.

### *Background*

Plaintiff filed this lawsuit against defendants on January 10, 2011, alleging civil rights violations, intentional homicide, and wrongful death aboard a maritime vessel. Plaintiff alleges that his father, Theodore Patterson, was mortally wounded on November 22, 1997, when defendant Timothy Traynor, the crane operator, "swung 32,982 lbs into him." (rec. doc. 1, pg 3) Plaintiff contends that the incident, which he alleges occurred aboard the M/V ATLANTIC,[1] a vessel owed by the Herforth Corporation ("Herforth"), was "deemed as intentional by witnesses," and no one involved in the incident was tested for drugs or alcohol use following the incident. *Id.* Plaintiff further alleges that defendant Wire Rope supplied the slings allegedly used during the incident, and Projects Equipment ("PEC") and "others" were responsible for "checking slings." *Id.*

---

[1]The court notes that the exhibits attached to plaintiff's complaint indicate that the incident occurred on the LASH barge #WA3-680, not the M/V ATLANTIC.

In support of his claims, plaintiff alleges that his father had made verbal complaints about illegal drugs being brought aboard the vessel while he was an employee of Transocean Terminal Operators ("TTO"), and had concerns about the safety of loading and unloading materials to/from the M/V ATLANTIC. The exhibits attached to plaintiff's complaint indicate that the longshoremen involved in the incident were moving bundles of pipe using nylon slings under the bundles when they encountered difficulties getting the sling under the first bundle. A wire rope sling then was placed under the center of the load which allowed the bundle to be lifted enough to put two nylon slings under each end of the bundle. Patterson (plaintiff's father) was standing on the wharf side, upriver from the barge, when the load was lifted and broke. The upriver end of the load swung toward the wharf side of the barge, pinning Patterson's legs against the side of the barge and breaking both legs. Patterson was taken to the hospital by ambulance, but died during surgery. TTO's Employer's First Report of Injury indicates that the injury was reported under the Longshore and Harbor Workers' Compensation Act, and the certificate of death reported the cause of death as a pulmonary embolus and compound fracture of leg/status post-surgical intervention. The coroner noted that the final diagnosis was cardiac failure due to injuries received while working on a boat, and that the death was "accidental - crushing injury." (rec. doc. 1, pgs 4-7) Plaintiff also contends that the defendants participated in the "cover-up of this incident." (rec. doc. 1, pg 2)

As relief, plaintiff requests that defendants be held responsible for civil rights violations and wrongful death; that the defendants compensate him for the death of his father, and that a criminal complaint be opened against defendants.

***In Forma Pauperis Standard***

Pursuant to 28 U.S.C. § 1915(e), a court shall review, as soon as practicable after docketing, a newly filed complaint and shall dismiss same, or any portion of same, if the court determines that the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Under 28 U.S.C. §1915(e), this Court is also authorized to dismiss an action brought *in forma pauperis* if satisfied that the action seeks monetary relief against a defendant who is immune from such relief. See G*reen v. McKaskle*, 788 F.2d 1116 (5th Cir. 1986). Further, "the district court may dismiss an action on its own motion under Rule 12(b)(6) [of the Federal Rules of Civil Procedure 'as long as the procedure employed is fair.'" *Franklin v. Laughlin*, 2011 WL 598489, *1 (W.D. Tex. 2011), *quoting, Bazrowz v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). "Analyzing the merits of a plaintiff's claim in a report and recommendation and giving the plaintiff an opportunity to object to the recommendation is a fair process for dismissing a case. *Franklin*, at *1.

An *in forma pauperis* suit is properly dismissed as frivolous if the claim lacks an arguable basis in either fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989); *Hicks v. Garner*, 69 F.3d 22 (5th Cir. 1995). The court has broad discretion in determining the frivolous nature of a complaint. *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). This discretion includes not only the "authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitze,* at 327. If a complaint is based on an indisputably meritless legal

theory, it lacks an arguable basis in law and may be dismissed as frivolous. A complaint may also be dismissed as frivolous if it lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.[2] Examples of claims which can be dismissed *sua sponte* under § 1915(e) include claims "where it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations."[3] Further, the district court may raise the limitations defense *sua sponte* in a suit filed *in forma pauperis* under 28 U.S.C. § 1915. *See, Wilke v. Meyer*, 345 Fed. Appx. 944, 2009 WL 3150381, at *1 (5th Cir.2009), *cert. denied*, 78 U.S.L.W. 3579 (2010); *Lopez-Vences v. Payne*, 74 Fed. Appx. 398, 2003 WL 22047325, at *1 (5th Cir.2003) *(citing Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir .1993).

Other examples of claims which may dismissed based on an indisputably meritless legal theory are "claims against which it is clear that the defendants are immune from suit," and "claims of infringement of a legal interest which clearly does not exist." *Neitzke*, at 1833, *citing e.g., Williams v. Goldsmith*, 701 F.2d 603 (7th Cir. 1983) Examples of claims of infringement of a non-existent legal interest are claims "describing fantastic or delusional scenarios." *Id.* A §1915(e) dismissal may be made at any time before or after service of process and before or after an answer is filed. *Green v. McKaskle*, *supra*. Also, a plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and

---

[2] *See Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S.Ct. 1728, 1733-34 (1992).

[3] *See, e.g., Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833, and *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

abuse already overloaded court dockets." *Green v. Boyd*, 2008 WL 2117671 (W.D.Tex. 2008), *quoting Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).

Moreover, courts have a continuing duty to examine their own jurisdiction, and are required to dismiss *sua sponte* any action over which they lack jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Federal Rule of Civil Procedure 12 further provides in pertinent part that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3)(emphasis added). "It is the duty of the district court, at any level of the proceeding, to dismiss a plaintiff's action *sua sponte* for failure of Federal jurisdiction even if the litigants do not raise the issue in responsive pleadings or in a motion to dismiss.[4]

### *GOVERNING LAW AND ANALYSIS*

#### *Maritime Tort Claims*

##### *A. Traynor, TTO, & PEC*

At the time of Patterson's injury and death, he was a longshoreman/stevedore employed by TTO. Plaintiff's exhibits to his complaint reveal that the incident which caused Patterson's injury and subsequent death occurred aboard a vessel or over navigable waters. (rec. doc. 1, pg. 5) In 1998, plaintiff, along with other members of Patterson's family, filed a personal injury action against Traynor, PEC, and Wire Rope in Civil District Court, Orleans Parish, No. 98-19745, Division J. On December 1, 2004, The Louisiana Fourth Circuit Court of Appeal determined that plaintiff could not sue Traynor or Traynor's

---

[4]Moore's Federal Practice, § 12.30, Mathew Bender 3d ed.; *Howard v. Lemmons,* 547 F.2d 290, 290 (5th Cir. 1977).

-5-

nominal employer, PEC, in tort because Traynor was the borrowed servant of TTO, Patterson's employer, and plaintiff's exclusive remedy was for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The Fourth Circuit denied plaintiff's request for rehearing on January 14, 2005, and his request for review/write of certiorari on April 22, 2005; and refused to consider his application for reconsideration on June 24, 2005. The U.S. Supreme Court denied plaintiff's writ of certiorari on October 31, 2005. *Wells v. Traynor*, 546 U.S. 984, 126 S.Ct. 563, 163 L.Ed. 2d 473, 74 USLW 3273 (U.S. La. October 31, 2005), and *Wells v. Traynor,* 892 So.2d 21 (La. App. 4 Cir. 2004)

As it has been determined by a court of competent jurisdiction that Traynor was, in effect, a co-employee of Patterson, and it is well established under the LHWCA[5] that tort claims for injuries or death suffered as a result of the negligence actions of a co-employee are barred, plaintiff's maritime tort claims against Traynor and TTO must be dismissed with prejudice. *Perron v. Bell Maintenance & Fabricators, Inc.*, 970 F.2d 1409, 1412 (5th Cir. 1992), *cert. denied*, 507 U.S. 913, 133, S.Ct. 1264 (1993).

### B. Forest Lines, Inc. and Its Insurers

In 1999, Forest Lines, Inc. and Central Gulf Lines, Inc., as owner, owner *pro hac vice*, and/or operator of the barge WA 3-680, filed a limitation of liability action in the United States District Court, Eastern District of Louisiana, Civil Action No. 99-1521-G-4, regarding

---

[5]The remedy provided by the LHWCA "shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death...." 33 U.S.C. § 905(a). "Section 5 of the Longshoremen's and Harbor Workers' Compensation Act destroys any underlying tort liability of the employer." *Robin v. Sun Oil Co.*, 548 F.2d 554, 556 (5th Cir.1977); *see also Nations v. Morris*, 483 F.2d 577, 587–88 (5th Cir.1973) (exclusivity provision of LHWCA "completely obliterates the rights at common, civil or maritime law against Employer and fellow employee"); *Pulley v. Peter Kiewit Son's Co.*, 223 F.2d 191, 194 (7th Cir.1955).

the incident "which occurred on November 22, 1997, and which resulted in injuries to, and the death of, Theodore B. Patterson, Sr." (E.D. LA., C.A. No. 99-1521-G-4, rec. doc. 28) Plaintiff in this suit, Kelvin Wells, appeared as a claimant in the limitation action, and moved to dismiss, with prejudice, "all claims filed in the captioned matter on their behalf as all such claims have been fully compromised and settled." *Id.*, rec. doc. 25. The district court's Final Decree of December 8, 2000, (rec. doc. 28), stated that:

> . . .all persons or entities having, or claiming to have sustained, any loss, destruction, damage, injury or death, by reason or in connection with, the accident occurring on or about November 22, 1997, as set forth in the Complaint filed herein, be and are hereby *perpetually enjoined and restrained from instituting or prosecuting, in any manner whatsoever, in this or any other proceeding, suit or action, in any court*, or in any country, any claim, action, suit or proceeding whatsoever against plaintiffs, Forest Lines, Inc. And Central Gulf Lines, Inc., as well as those against Barge WA3-680, or against any other vessel or property of plaintiffs in limitation, its successors or assigns, along with its insurers . . . . (emphasis added)

Plaintiff's claims against Forest Lines, Inc., and its insurers therefore must be dismissed with prejudice.

### C. Wire Rope Corporation of America, Herfurth Co, and their insurers

Plaintiff alleges that Wire Rope supplied the slings used during the incident; one of the slings broke; and the other sling swung toward the center of the load, causing the weight of the load to swing towards the wharf, and pinning Patterson's legs against the side of the barge (rec. doc. 1, pgs. 3-4) With regard to Herfurth, plaintiff states that Herfurth was the owner of the M/V ATLANTIC, but there are no allegations relating to either Herfurth's involvement in the incident, or this vessel's connection to the incident. The exhibits to plaintiff's complaint, along with the limitation of liability action previously filed by Forest Lines, indicates that the vessel which was being discharged at the time of the

incident was LASH barge #WA3-680. (rec. doc. 1) Nevertheless, the court notes that both Wire Rope and Herfurth (and their insurers) were sued in plaintiff's Civil District Court action (No. 98-19745), and a judgment was rendered in that action on November 7, 2003, dismissing all of plaintiff's claims.

The court also notes that while that prior judgment may subject the current suit to *res judicata* and *collateral estoppel* effects, this court cannot reach that determination as the record is devoid of the content of the prior claims against Wire Rope or Herfurth; however, the court finds that the claims against Wire Rope and Herfurth should be dismissed for failure to state a claim upon which relief may be granted because a civil action for damages for death arising out of a maritime tort must be brought within 3 years after the cause of action arose. 46 U.S.C.A. § 30106. Patterson's death occurred on November 22, 1997; thus, plaintiff's maritime action prescribed in November, 2000. As the prescriptive period presumably has run on his federal claims, it is plaintiff's burden to show that an exception, interruption, or suspension to prescription applies. Under La. C.C. article 3492, prescription may be interrupted when the plaintiff "commences action . . . in a court of competent jurisdiction and venue." *Carter v. Louisiana Health Service & Indemnity Co.,* 2011 WL 3199553 (M.D. La. 2011), *quoting Doe v. Delta Women's Clinic of Baton Rouge*, 37 So. 3d 1076, 1079 (La. Ct. App. 1st Cir. 2010)

As stated earlier, plaintiff and other members of Patterson's family previously filed a personal injury action against these same defendants in Civil District Court, Orleans Parish, No. 98-19745, Division J., sometime in 1998, which was dismissed on November 17, 2003; and plaintiff's appeals ended on October 31, 2005, when the U.S. Supreme

Court denied plaintiff's writ of certiorari. Thus, even assuming *inarguendo* that prescription may have been tolled during the pendency of that suit, the time limitation for filing a claim for a death arising out of a maritime tort began to run again on November 1, 2005. Resolving all doubt in plaintiff's favor and beginning the prescription time clock on November 1, 2005, plaintiff would have had three years from November 1, 2005, at the latest, to file suit on a maritime tort claim, which would have been approximately November 1, 2008.

However, plaintiff next filed suit in this court on August 12, 2009, against Traynor, Projects Equipment, and Wire Rope, alleging civil rights violations, and "hate crime-murder," more than nine months after the latest prescription period had expired. *Wells v. Traynor*, Civil Action No. 09-cv-00649-RET-SCR, rec. doc. 1. Plaintiff's complaint in that suit alleged that Patterson had complained about racism and other illegal activities at the jobsite, and the defendants helped cover up the *murder.*[6] The court rightfully interpreted the complaint as one for wrongful death under La. C.C. article 2315.2, stating in its opinion that:

> Plaintiff's allegations cannot be reasonably read to assert a claim for the violation of his father's civil rights. To raise a valid claim under 42 U.S.C. § 1983, a plaintiff must prove that a state actor infringed his constitutional rights. *Romero v. Lann*, 305 Fed. Appx. 242 (5th Cir. 2008). None of the defendants are state actions.

*Wells v. Traynor,* 2009 WL 3172682 (M.D. La. 2009)

Ultimately, on September 29, 2009, that court held that there was no subject matter jurisdiction under 28 U.S.C. § 1332 as there was not complete diversity between the

---

[6] C.A. 09-649-RET-SCR, rec. doc. 1, paragraph 4 (emphasis in original).

plaintiff and all the defendants, and the case was dismissed without prejudice. *Id.* Plaintiff appealed this ruling to the Fifth Circuit Court of Appeals, which affirmed the district court's ruling in a mandate issued on July 1, 2010. Again, assuming *inarguendo* that plaintiff filed Civil Action No. 09-649-RET-SCR in an attempt to interrupt prescription on the maritime tort action, that suit was not timely filed as it was filed almost a year later than the most generous calculation of tolling could allow, and therefore this suit is equally untimely as it was not filed until January 10, 2011. Thus, all of plaintiff's maritime tort claims in the present suit against all the defendants also therefore must be dismissed as barred by the applicable statue of limitations.

***Civil Rights Violation Claim - 42 U.S.C. § 1983***

In order to bring a civil rights claim under § 1983, plaintiff must prove that the conduct in question deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States; and that the conduct complained of was committed by a person acting under color of state law. *See, e.g., Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed. 2d 572 (1980). For the court, the first inquiry is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed. 2d 433 (1979).

Here, plaintiff alleges in the current suit that "Patterson [plaintiff's father] had made verbal complaints and concerns about illegal drugs being brought by vessels during his tenure in which Transocean Terminal Operators and others may have been involved and had made concerns know (sic) pertaining to unsafe acts and safety when loading and unloading materials." (rec. doc. 1, pg. 3) As in his earlier suit, these allegations are not a

valid claim under 42 U.S.C. § 1983, as none of the defendants are state actors. Plaintiff's civil rights violation claims therefore must be dismissed as frivolous as plaintiff has claimed an infringement of a legal interest which clearly does not exist.

***Wrongful Death Claim (Intentional Homicide) - La. C.C. art. 2315.2***

Plaintiff's claims are limited to a wrongful death claim under Louisiana Civil Code article 2315 because general maritime law does not recognize a cause of action for wrongful death of a longshoreman which does not occur on high seas, and plaintiff has not alleged any actions which would give rise to a constitutional violation, or a violation of federal law.

However, plaintiff's wrongful death claim under La. C.C. art. 2315.2 is prescribed on its face; thus, plaintiff bears the burden of showing why the claim has not prescribed. *Lima v. Schmidt*, 595 S.2d 624 (La. 1992) Louisiana law provides that the running of prescription may be suspended or tolled for equitable reasons, which has been expressed in the civilian legal principle of *contra non valentem*. Under this principle, there are four situations in which the one-year prescriptive period for delictual actions will not run:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor (defendant) himself has done some act to prevent the creditor (plaintiff) from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp* ., 310 F.3d 870, 884 n. 37 *(citing Plaquemines Parish Comm'n Council v. Delta Dev. Co.,* 502 So.2d 1034, 1054-5 (La.1987)).

Here, only the fourth category remotely could apply because previous courts have taken cognizance or acted on plaintiff's action (category 1); plaintiff was not prevented from

-11-

bringing his tort claims, and in fact, did previously bring those claims (category 2); and plaintiff has not alleged that any defendant performed such act to prevent him from filing a wrongful death tort claim (category 4). The fourth category, commonly known as the "discovery rule," provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. *Griffin v. Kinberger*, 507 So.2d 821 (La.1987).

With regard to a wrongful death claim, La. C.C. article 2315.2(B) provides that the "right of action granted by this Article prescribes one year from the death of the deceased." Thus, plaintiff's right to bring a wrongful death action prescribed on or about November 22, 1998. Even assuming *inarguendo*, that the fourth category involving the tolling of prescription was applicable to this case, that period expired when plaintiff filed a tort action in 1998 regarding his father's death and the incident which preceded it, which resulted in the November 2003 judgment dismissing the action. As the appeals process continued until October 2005 when the U.S. Supreme Court denied plaintiff's writ, prescription may have tolled during this period. However, a period of almost four years lapsed before plaintiff filed his first wrongful death action in this court (Ca. 09-649-C-RET-SCR), and plaintiff has alleged no facts in support of an interruption of prescription between October 2005 and his first federal suit in 2009. Further, while the Fifth Circuit upheld the dismissal in July 2010, plaintiff's current suit before this court was not filed until January 10, 2011. Thus, even given the broadest reading to plaintiff's claims and the doctrine of *contra non valentem*, plaintiff can argue no set of facts which would show the claim has not prescribed, especially as he filed a personal injury action against all the defendants in

1998, and his wrongful death claim must be dismissed as barred by the applicable statute of limitations.

### *Amending the Complaint*

In most circumstances, when a plaintiff's complaint fails to state a claim upon which relief may be granted, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir.2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification ... is considered an abuse of discretion." (internal citation omitted)). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face ...." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir.2007) (unpublished) (*per curiam*) (" '[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.' " *(quoting Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir.1999))).

Here, even assuming *inarguendo* that plaintiff simply has failed to state a claim upon which relief may be granted, and should be provided an opportunity to amend his

complaint, the amendment would be futile as it is clear that the defects are incurable. First, plaintiff's exclusive remedy against Traynor, TTO, & PEC. was for benefits under the LHWCA, and no tort claim may proceed against these defendants. Second, plaintiff released any claims he may have had against Forest Lines, Inc. and its insurers by his filing a dismissal with prejudice in Forest Line's limitation action, as indicated by that court's Final Decree issued on December 8, 2000. Third, plaintiff's personal injury suit in state court, which included defendants Wire Rope, Herfurth, and their insurers, was concluded on November 7, 2003, by a rendered judgment. Thus, his claims lack an arguable basis in either fact or in law, and therefore are frivolous. The claims are based on indisputably meritless legal theories in that he has claimed an infringement of a legal interest which clearly does not exist (civil rights violations); and all the claims raised in the complaint are barred by the applicable statue of limitations, even given the broadest reading to the interruption of prescription on any of the claims, and resolving all doubt in favor of plaintiff.

## *RECOMMENDATION*

For the above reasons, it is the recommendation of the magistrate judge that plaintiff's claims be dismissed *sua sponte* under 28 U.S.C. § 1915(e) as frivolous.

Signed in Baton Rouge, Louisiana, on June 21, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELVIN WELLS** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 11-00019-RET-DLD** |
| **TRANSOCEAN TERMINAL OPERATORS, PROJECTS EQUIPMENT COMPANY, WIRE ROPE CORPORATION OF AMERICA, TIMOTHY TRAYNOR, HERFORTH CORPORATION, GHZ INSURANCE COMPANY, FOREST LINES, INC.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 21, 2011.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**